IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

HEATH DICKERSON                                                                            PLAINTIFF

            v.                      Civil No. 4:09-cv-04011

MILLER COUNTY, ARKANSAS;
SHERIFF LINDA RAMBO;
WARDEN JANICE NICHOLSON;
SGT. DOLLY SIMMONS;
NURSE TRINA OWENS; and
NURSE MELODY NELLIE THOMAS                           DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff, Heath Dickerson, pursuant to the provisions of 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Plaintiff is currently an inmate of the Arkansas Department of Correction, Cummins Unit, in Grady, Arkansas. The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in the Miller County Detention Center (MCDC) in Texarkana, Arkansas. Specifically, Plaintiff alleges his constitutional rights were violated when: (1) he was denied adequate medical treatment; (2) Defendants failed to protect him from attack by fellow inmates; and (3) he was subjected to unconstitutional conditions of confinement.

The Defendants have filed a motion for summary judgment (ECF No. 46). At Plaintiff's request (ECF No. 50), a questionnaire was prepared to assist him in responding to the summary judgment motion. The Plaintiff has filed his response (ECF No. 55). Defendants filed a reply brief

(ECF No. 57). The motion is now ready for decision.

**1. Background**

Plaintiff was booked into the MCDC in June of 2008. *Plaintiff's Response* (ECF No. 55)(hereinafter *Resp.*) at ¶ 1. From June 9, 2008, until February 6, 2009, Plaintiff maintains he did not receive the medical treatment/medication he needed. *Id.* at ¶ 2(A) & ¶ 12(A). He maintains his signature was forged on medication administration logs to indicate he was receiving his medication. *Id.* at ¶ 2(B). According to Plaintiff, he submitted grievances about this situation to Dolly Simmons, Officer Collins, Warden Nicholson, Sheriff Linda Rambo, and Sergeant Ballard. *Id.* at ¶ 3.

Plaintiff indicates he was on the following medications: amitriptyline (sleeping); Tylenol Arthritis (pain); Seroquel (bi-polar disorder); Accupril (high blood pressure); Metoprolol Tartrate (high blood pressure); Coumadin (heart valve); Zoloft (depression); and Klonopin (anxiety). *Resp.* at ¶ 2(D). As a result of not receiving his medication, Plaintiff maintains he still suffers from neck and back pain, muscle convulsions, and dizziness. *Id.* at ¶ 2(E).

On June 9, 2008, Plaintiff states he was put in Max A pod by Officer Simmons after he informed her of his medical problems. *Resp.* at ¶ 6. He states two of his teeth had been broken in an altercation. *Id.*

On July 30, 2008, Plaintiff was taken to the Southwest Family Practice Clinic and examined by Dr. Masil. *Resp.* at ¶ 5(A); *Defts' Ex.* A. It was noted that four days prior to the visit, Plaintiff fell down three stairs after slipping on a puddle of water. *Defts' Ex.* A. An x-ray was taken of Plaintiff's hand and no fracture or dislocation was found. *Id.* Dr. Masil advised Plaintiff to keep his hand elevated, to use a cold compress, and to use Tylenol 650 mg. for pain. *Id.* at ¶ 5(c).

Sometime between August and October of 2008, Plaintiff maintains he was jumped by

several people, his hand was broken, his neck and back were injured, and his food tray taken. *Resp.* at ¶¶ 4(A)-(B) & 5(E). He asserts the hospital records incorrectly indicate his hand injuries were the result of a fall. *Id.* at ¶ 4(B). He asserts that his back and neck injuries were "kept silent." *Id.* at ¶ 5(E). On August 5, 2008, Plaintiff was seen at the Southwest Family Practice Clinic by Dr. Paul Gardial. *Resp.* at pgs. 26-28. X-rays of his hand were taken and no fracture or dislocation was noted. *Id.* at pg. 28. He was advised to elevate his hand, use a cold compress, and take Tylenol 650 mg. as required for pain. *Id.* He was also advised to continue his medication for his chronic conditions and given a prescription for Tylenol Arthritis 650 mg, and Amitriptyline, 50 mg. once daily.

Beginning on September 29th, Plaintiff states inmates fought over the toilets because the pod was overcrowded. *Resp.* at ¶ 7(A). Plaintiff was involved in the fights. *Id.* at ¶ 7(B). As a result, he indicates he suffered severe headaches, had several black eyes, and bruises and knots over his head and back. *Id.* He states his back and face were swollen and he had to sleep on his stomach for about two weeks. *Id.*

As a result of overcrowding, Plaintiff states unsanitary and inhumane conditions were created. *Resp.* at ¶ 7(B). When asked to explain the unsanitary or inhumane conditions, Plaintiff responded:

> I slept on a towel on the floor for at least two weeks. We were fed cold food with never enough trays. The only way one got clean towels or clothes one must pay a trustee. Were issued a few rolls of toilet paper for everyone to use.

*Id.* at ¶ 7(D); *see also Resp.* at ¶ 8(D). As a result of the unsanitary conditions and having to sleep on the floor, Plaintiff indicates he developed boils, rashes from the unsanitary restroom conditions, and back and neck pain. *Id.* at ¶ 7(E) & ¶ 8(F).

Beginning on September 29th, Plaintiff states inmates had to purchase toilet paper, food trays, mats and clothes from the staff and trustees. *Resp.* at ¶ 8(A). Plaintiff indicates he did not have sufficient funds to purchase these items and was denied the items. *Id.* at ¶ 8(B).

Thanksgiving Day of 2008, Plaintiff maintains he was attacked by several inmates, was severely injured, and had to spend several days in the infirmary. *Resp.* at ¶ 9(A). Plaintiff and Randall Plattner had locked themselves in their cell. *Id.* at ¶ 10(B). Despite this, Plaintiff maintains Officer Collins opened the locked door allowing the inmates to jump on Plattner and the Plaintiff. *Id.* Plaintiff believes the attack was caused by the jail's overcrowded conditions and by the blatant disregard by staff for the safety of inmates.. *Id.* at ¶¶ 9(C) & 10(A). As a result of this attack, Plaintiff states he suffered the following injuries: "neck and back pains, spasms, severe head aches. Swollen black eyes, bruises and knots all over my head and back, also lost a lot of weight. Two teeth broke in front of my mouth." *Id.* at ¶ 9(B). Plaintiff states he submitted grievances about this incident to Officer Collins, Sheriff Rambo and Warden Nicholson. *Id.* at ¶ 9(D).

Plaintiff was asked whether he notified or warned staff that he could potentially be attacked by other inmates. *Resp.* at ¶ 10(C). He answered affirmatively and stated: "June 9, 2008, (CO) Dolly Simmons were informed of my medical problems, yet she put me in Max A despite the fact of the disturbances that occurs in Max A (fights)." *Id.*

On January 23, 2009, Plaintiff was caught hoarding medication including about eleven and a half (11 ½) Coumadin tablets. *Resp.* at ¶ 13(A) & pg. 30. Plaintiff states he purchased twelve (12) pills from the trustees. *Id.* Otherwise, Plaintiff states he would have had to do without this medication. *Id.* There was an incident report regarding this but Plaintiff does not have a copy of the report. *Id.* at ¶ 13(B). *See also Defts' Ex.* B (nurse's notes).

On January 5, 2010, Plaintiff was seen because of a toothache. *Defts' Ex.* C. A note was made that he should be referred to a dentist. *Id.*

On February 16, 2010, Plaintiff was transferred to the ADC's Cummins Unit. *Resp.* at ¶ 14. On March 3rd, Dr. Almond placed Plaintiff on thirty days bed rest, thirty days no duty, thirty days no yard call, and thirty days no sports until his mental health treatment and neck pain were controlled. *Id.* at ¶ 15(A). Dr. Almond did not indicate a cause for Plaintiff's neck pain. *Id.* at ¶ 15(B).

With respect to Sheriff Rambo, Plaintiff states she knew about the overcrowding, the filthy and unsafe conditions, and about inmates being required to purchase food trays, mats, and clothes from staff and trustees, yet took no corrective action. *Resp.* at ¶ 16(A). With respect to Janice Nicholson, Plaintiff states she was aware of the inhumane conditions because she saw the conditions, received grievances about the conditions, and had family calling the jail about the conditions. *Id.* at ¶ 16(B). Similarly, Plaintiff states Sergeant Simmons received grievances several times about the conditions. *Id.* at ¶ 16(C). He also states she had him put in Max A on June 9, 2008. *Id.*

With respect to Nurse Trina Owens, he states she overlooked his medical condition and gave his medication to the guards and placed it on counters to be taken by others. *Resp.* at ¶ 16(D). He indicates jail forms, which he refers to as OCCs, will verify the fact that he did not receive his medication and his initials were being forged. *Id.* Similarly, Plaintiff maintains Nurse Thomas overlooked his medical condition, gave his medication away, and charged him with abusing his medication. *Id.* at ¶ 16(E).

**2. Applicable Standard**

"Summary judgment is appropriate when "there is no genuine issue as to any material fact

and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3.  Arguments of the Parties

First, Defendants argue the complaint and supplemental complaint do not make specific factual allegations against any of the Defendants. Second, with respect to the failure to protect claim stemming from the fight on Thanksgiving Day 2008, Defendants maintain there is no evidence to suggest Defendants were put on notice that Plaintiff was at a serious risk of harm by being housed in a pod with other inmates. They point out that neither Officer Collins nor Sergeant Carolyn Ballard are Defendants. Third, with respect to Plaintiff's medical needs, Defendants argue there is no record of Plaintiff submitting grievances about missing or stolen medication, the forging of medication logs, or the provision of inadequate medical care. Further, they point out Plaintiff has failed to present evidence of any injury resulting for a denial of medical care or a delay in the receipt of medical care. Defendants argue that the complaint is completely devoid of any alleged custom or policy of Miller County which resulted in violation of Plaintiff's constitutional rights.

In response, Plaintiff has articulated the basis of his claims against each Defendant. With respect to the failure to protect claim, Plaintiff states he informed Defendants that he was in danger of being attacked by other inmates. Furthermore, because of the overcrowding and other unconstitutional conditions of confinement, he maintains there were frequent fights and the Defendants blatantly disregarded the unsafe conditions. Third, with respect to his medication, he

contains the medication logs will establish he did not receive necessary medications and/or his initials were forged. Finally, Plaintiff maintains Miller County had a policy and practice of allowing inhumane conditions at its jail.

### 4.  Discussion

As noted above, Plaintiff has brought three separate constitutional claims. Each will be addressed in turn.

#### A.  Denial of Medical Care

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (1989). "To establish a constitutional violation based on inadequate medical care, [Plaintiff] must show that he suffered from a medical need that was objectively serious." *Christian v. Wagner*, 623 F.3d 608, 613 (8th Cir. 2010). A medical need is serious if it has been diagnosed by a physician as requiring treatment, or is so obvious a lay person would recognized the need for treatment. *See Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008). The Plaintiff must also show that Defendants were subjectively aware of the need for treatment but deliberately disregarded it. *Christian*, 623 F.3d at 613.

Considering the summary judgment record as a whole, I find genuine issues of fact exist as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. While the records submitted show Plaintiff was seen by a doctor on August 5th, 2008, labs were done on February 14, 2009, and he was seen because of a toothache on January 5, 2010, no other medical records have been submitted. The Court has been provided with no affidavits and no medication logs. Plaintiff's response has been sworn to under penalty of perjury. Clearly, Plaintiff suffered from a variety of medical conditions serious enough to require treatment by means of prescription

medication.

### B. Failure to Protect

Due process "'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)(*quoting Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)). Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998). In addressing failure to protect claims brought by pretrial detainees, the Eighth Circuit Court of Appeals has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins*, 161 F.3d at 1129- 1130. *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

To prevail on his failure to protect claim, Plaintiff must show: (1) that he was incarcerated under conditions posing a substantial risk of harm, and (2) the defendants knew of and disregarded an excessive risk to his safety. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011); *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002).

When asked how his safety was disregarded, Plaintiff indicated that Officer Collins opened a locked door which allowed inmates to jump on him and Randall Plattner. *Resp.* at ¶ 10(B). Officer Collins, however, is not a named Defendant.

With respect to the named Defendants, Plaintiff states that Dolly Simmons moved him to Max A pod despite the fact that fights had occurred in that pod. There is no suggestion in the record that other inmates had threatened Plaintiff, or that he had told jail officials that he felt threatened, or that the conditions in Max A were such that they posed a substantial risk of serious harm. Although Plaintiff states there were fights at the facility, he does not indicate how many fights occurred, how frequent the fights were, whether the fights were limited to certain inmates or pods, or whether specific inmates were being targeted. The mere fact that there had been fights at the facility, without more, does not "impute to prison officials subjective knowledge" of any specific danger to the Plaintiff. *Holden*, 663 F.3d at 341. I find no genuine issues of material fact exist as to the failure to protect claim.

### C. Unconstitutional Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In cases involving both pre-trial detainees and convicted inmates, the Court of Appeals for the Eighth Circuit has repeatedly applied the deliberate indifference standard of the Eighth Amendment. *See e.g., Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010); *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)(deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or convicted inmates).

The Eighth Amendment to the United States Constitution prohibits the imposition of cruel

and unusual punishment. U.S. Const. amend. VIII; *see also*. The Cruel and Unusual Punishment Clause of the Eighth Amendment "prohibits penalties that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency. Punishment that deprives inmates of the minimal civilized measures of life's necessities is unconstitutional." *Morris*, 601 F.3d at 809 (internal quotation marks and citations omitted).

To prevail on a conditions-of-confinement case, Plaintiff must show: (1) the condition was serious enough to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm; and (2) officials were deliberately indifferent to his health and safety. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).

Keeping these principles in mind, I turn to an examination of the conditions of confinement alleged to exist in this case. Plaintiff maintains he was exposed to the following conditions: overcrowding resulting in fights for the use of toilets; having to sleep on the floor on a towel for two weeks; being fed cold food and there never being a sufficient number or trays; after September 29, 2008, having to pay for towels, clothing, toilet paper, food trays, and mats; being issued too few rolls of toilet paper for the number of inmates; and unsanitary conditions. Plaintiff asserts he had insufficient funds to purchase all necessary items. *Resp.* at ¶ 8(A). As a result of the conditions, Plaintiff maintains he suffered from boils, rashes, and back and neck pain.

I believe there are genuine issues of fact as to whether Plaintiff was exposed to unconstitutional conditions of confinement. Defendants have provided no affidavits or other materials describing the conditions of confinement or stating what items were furnished by the jail to inmates.

### 5.  Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (ECF No. 46) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to the failure to protect claims and be denied with respect to the medical care and conditions of confinement claims.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of January 2012.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE